The next case is Daniel Barry, U.S. Secretary of Veterans Affairs, 2022-1747. Daniel Barry, U.S. Secretary of Veterans Affairs, 2022-1747 Good morning, Your Honors. May it please the Court. The Veterans Court majority erred in its interpretation of 38 U.S.C. 1114P in its accompanying Regulation 38 CFR 3.35 S.3. by limiting Mr. Barry to one half-deck increase in his special monthly compensation rate. Neither the text of the statute or regulation expressly limits the veteran to only one half-deck increase. The only expressed cap in the statute and regulation is SMC level 0. Yet, the Veterans Court majority reads in a further limitation. And in doing so, it uses the same reasoning regarding the language of the statute and regulation that this Court has already rejected in Sursley v. Peek. In Sursley, this Court held that the use of singular terms and the disjunctive or did not limit a veteran to one clothing allowance if that veteran qualified for more through his condition. The same reasoning should also apply here, and the Secretary does not provide a response for Sursley in its brief. What is your view of the impact of the Veterans Canon in your analysis? So it is our opinion that once the Veterans Court majority decided that the actual text of the statute and regulation did not answer the question and also expressed some reservation regarding the canon against surplusage, that the Veterans Court majority should have applied the pro-veteran canon. But what, okay, so I guess I'm interested in what your view is to what the circumstances are that the Veterans Canon comes into play. So we've got more than three buckets, but let's say there are three buckets. One, the statute is clear one way or another. In that instance, we all agree the Veterans Canon plays no role. Yes, Your Honor. If there are several plausible interpretations, but one of them is the most reasonable. And let's say that most reasonable interpretive rule goes against the veteran. Does the Veterans Canon have any play to dislodge that result? So, Your Honor, while we don't believe that there is any Supreme Court case law that subordinates the Veterans Canon to the other tools of statutory interpretation, we are aware that this court has created a hierarchy in a sense. So under our scheme, we would propose you do look at the text first, and then you would look at other textual canons or descriptive canons. And you come up and you say there are several plausible interpretations, even reasonable interpretations, but we conclude that one of them is more reasonable than all others. And that more reasonable interpretation is against the veteran. Any impact of the Veterans Canon in that circumstance? So, Your Honor, if you were able to conclude with the descriptive, the textual, and semantic canons that there is a more reasonable interpretation of a statute, then we would, yeah, in our scheme, we would not apply the pro-veteran canon. We submit here that— No, I understand. You're using—this is a hypothetical. Right. But in the third category, I mentioned at least three buckets, if there are two equally plausible interpretations to the language, would you say the canon then becomes the tiebreaker? So, Your Honor, we wouldn't categorize the canon as a tiebreaker. We would say that after the semantic canons, you'd look at the veteran canon along with other normative canons. But what we would say is that the canon would come before deference. So we read the case law as creating some daylight between the concept of interpretive doubt, which is what happens when you've exhausted the semantic canons in the text, and absolute ambiguity, which is only kind of what we've reached once we decide that we have used every single tool, including the veterans canon, in our toolkit, and we still don't know what the statute means. Counsel, how can we arrive at clarity by looking at the overriding statutes? 1114K versus 1114P. K talks about each such law. That certainly applies pretty clearly to singular, doesn't it? So, Your Honor, is it your interpretation of the each such law, meaning that a veteran can only obtain one reward under 1114K? I just want to make sure I understand your interpretation. That's the point, yes. So, first of all, Your Honor, I don't believe that that is the reading of 1114K. So 1114K is what the VA calls a special rate payment variation. It is something that you can add to your special monthly compensation rate. And I believe that the statute 1114K, because it says you can receive compensation for each such law, that means that a veteran is able to get 1114K multiple times. If he has one loss, the statute is $96. I think the number is different today, but he gets $96. What about 1114P, which talks about the next higher rate or an intermediate rate? Sure. So 1114P applies to L and N. To address first the issue of the singular use of V and rates of singular terms, this Court has already decided in Sersely that that's not dispositive. In Sersely, the language of the statute used A, and the language of the regulation used V in reference to a clothing allowance. And this Court cited 1 U.S.C. 1 stating that words importing the singular include and apply to several persons, parties, or things to conclude that the simple use of the singular term did not limit the veteran to just one allowance. But going back to 1114K and the interplay with 1114P, 1114P applies to these rate conditions. So K, we're looking at the individual loss of a limb or the loss of the use of a limb. Whereas under 1114P, we're looking at various conditions listed through SMCL through N. And these conditions are broader than just a single loss of a limb. There's a loss of use of both legs with or without the ability to wear prosthesis, depending on what disability level that you're at. So we submit that 1114K and P are really apples and oranges in terms of the type. But isn't there some overlap between what they're talking about? I mean, can you not use, I mean, you agree, even if we accepted your view of the language that he can go in multiple times, it's not absolutely clear. We agree with that. Wouldn't it have been clearer and more likely that one would have said, that one would have said, and you can do this more than once? And that's the principle here. Or for each combination of loss we've got under P for over 50% or more, for each of those, you can get a half step. That's, I think, Judge Lurie's point, that that's kind of the way Congress did it in K. And why would, if that was their intent in P, why would they not have used that similar language? Sure, Your Honor. And we agree that Congress can always be more clear when it legislates with respect to veterans. However, Congress cannot be expected to- Well, I don't think that's limited to veterans. That's true, overall. However, Congress cannot be expected to take into account the disabling conditions of every single veteran. There are just simply too many conditions to legislate for. And so when it created 1114P, if we look at the legislative history, the whole purpose of 1114P was to provide a more flexible scale for veterans to get additional compensation if they had the additional disabilities to qualify for it. And with respect to the language difference between 1114K and P, if we looked at the language in 1114P, we can't just simply adopt this, kind of, each such loss language. Because P says, in the event the veteran's service-connected disabilities exceed the requirements for any of the rates prescribed in this section, the Secretary may allow the next higher rate or intermediate rate. You would have to change the language more than simply adding, you know, in the event each of the veteran's service-connected disability or disabilities. So I would say that there isn't the same parallel between K and P, such that we would conclude that there's a presumption that Congress meant for multiple awards under K, but not multiple awards under P. Are you aware of- has anybody done a search of other statutes or regulatory regimes under the Veterans Code in terms of the number of them that, say, have the limiting language and don't have the limiting language? So, Your Honor, I'm not aware of that. The one case that I think has language very similar, in that it uses the singular terms, it uses the deductive or to describe two different qualifications for an allowance, is Cercily. And that's where we decided in Cercily the purpose of the singular term was just to link the receipt of the benefit to the qualification for that benefit. So a clothing allowance is linked to the use of a prosthesis or prosthetic device. And we would submit here a half-step increase is linked to a 50% disability or a combination of disabilities that rate at 50% or more. Can I just take you back to the Veterans' K and M? Of course. If there were- how does- I guess I'm- I don't want to dwell on this too much, but I'm trying to see how your view of the Veterans' K and M relates when we have a regulation. Let's say we've got Chevron deference. So in a Chevron deference circumstance, does- if there's a tiebreaker, does Chevron deference not apply in your view and the Veterans' K and M would trump Chevron deference? Your Honor, I don't believe that the Veterans' K and M would trump Chevron deference, but I do believe that it should be applied before Chevron deference along with the other tools of statutory interpretation. And we would weigh the Veterans' K and M just like any other K and M or any other tool of statutory interpretation, such that the end result is not that it is necessarily a tiebreaker or that the result necessarily always comes out in favor of Veterans. And I believe we've done that before in cases such as Nova, where we looked at the Veterans' K and M and we said, hey, the Veterans' K and M points in favor of the Veterans, but the legislative history points in the other direction. Therefore, we will find this ambiguous and- or this regulation ambiguous and see if we need to apply deference. In that case, I think the Court ultimately did not apply deference because the regulation hadn't gone through the proper notice and comment rulemaking, but the analysis, it was one that applied the pro-Veterans' K and M before considering deference, and it still didn't come out in favor of the Veterans. If you would like to need a rebuttal, you can continue or stay there. I'd like to reserve the remainder of my time. All right. Mr. Hoffman. May I please, Your Court? I'll begin with the P and K questions. First, when we look at P, it characterizes what's at issue as the Veterans' service-connected disabilities, and when they exceed the requirements of any of the rates in the schedule, under P, the Secretary may allow the next higher rate or intermediate rate, I think by itself, that answers the question. Then when you add it in the P, which incidentally I don't know if counsel responded to in a reply brief, it focused on the P and K question. Our view of the P and K question is just as we put it in our briefs. In the same statute, Congress demonstrates that they can distinguish between disabilities and what we'll call stacking them, if you will. For purposes of this calling, it may not be the most polite term, but you can add. But don't you agree, don't you see some merit in your friend's analysis of the different things we're talking about in P and K? Because I get what she's saying. I don't necessarily agree with her, but I get what she's saying in terms of K being different. Of course, they have to say that. K is much more precise. K is much more precise. And they have to say that in K. Yes, because that's the nature of what you're doing in K. Okay, all right. So if that's, I mean, it seems to me that's the main, I mean, the veterans, the Court of Veterans Claims didn't buy into the language of the RAC so much at all. And this, it seems to be going through it, what am I missing? The main thing was K. So if we're not finding the strength of K, where are we? I think at the end of the day, well, no, I think K is a strong argument. I still think, you know, it's a classic tool of construction, right? Same statute, same time. We're not even talking about, like, different times within the same scheme. We're talking about this is the statute. They put this together at the same time, and they were consciously distinguishing. Well, the question is, where do we start? I mean, forget K for a second, I'm sorry. But it depends on what your starting point is. When you look at the reg, and you assume if somebody says something, is the assumption that unless, is the burden to say that you can only do it once? Or is there an assumption that you can't do it more than once, or you can do it more than once? So that's, thank you, because when I came to this case recently, I thought, it just struck me that the argument being presented here is exactly 180 degrees from how the VA approaches the rating of disabilities. The goal, obviously, is to use a combination of objective, and most of it is objective, ratings for all veterans. And then you have these extra scheduler provisions, like 3.321 or 4.16, which deal with those special circumstances where somebody can't meet the rating or a combination of ratings, and they get these extra scheduler relief questions. And then you have 4.25, which is in our brief, talking about the comparative table. And 50 and 50 and 50 in VA ratings doesn't get you 150. It gets you 88. 50 and 50 and 50 and 50 doesn't get you 200, or even 100. So these things get added together because the goal is to identify the entire, the overall disability picture for each veteran that's seeking benefits. And the thing that strikes me most about the argument that's being raised here is actually the contrast between F3 and F4, which was the last thing the Veterans Court got to. And if you think about it, where someone can compile a bunch of 30% ratings, which we know are serious. I don't mean to demean anybody's injury, their service, all that. But if you're going to tell me that you can combine a bunch of 30% ratings in combination under F3 to get a couple of 50s, or maybe three 50s. And yet that individual then gets more compensation from VA than the individual who qualifies for a 100% scheduler, which under any of these codes in 4.71 and et cetera, afterwards in Part 4 of VA, show that these are serious. I take your point. On the other hand, and this comes right out of the, the Court of Veterans Claims, I think, did a nice job in certain respects. And when they start off by summarizing the statute, the provisions we're talking about, they talk with them a little background on the SMC as an order. It's available when a veteran's service-connected disabilities or disability caused, quote, additional hardships above and beyond those contemplated by VA's schedule for rating disability. There's no limit on that, on how many hardships you have. The rate of SMC, they go on, varies according to the nature of the veteran's service-connected disabilities. Basic levels are listed in K, providing for compensation. If you have three of those, if we're both similarly situated, and Mr. Berry's situation is just monumental, and why would you not be able to get, why shouldn't I get more than you get if I have six or seven or eight of these extra things that are allowed credit under the statute, and you only have three? I've got much more of a hardship. And one other point to that is that Congress didn't let things run wild here. One thing is clear is they were aware that we've got to cap this at some point, either for budgetary reasons or whatever. And there's a cap. There's an ultimate cap. So I take your point, 50-50-50, but there is a cap in terms of how far you can go that Congress expressly included. The answer, Your Honor, is quality over quantity. It's like last term or last year when you dealt with Maddox and Rowan, and the argument was if I have three pieces of evidence, that's going to trump one piece of evidence. That's not how it works, as this Court explained. The quality of the disability, in a way, is as awful as it sounds, the quality of the disability. But the provision says, the F3 says, that you're entitled to this, so they're giving credit. They're not limiting it to how many, but they're saying, no, we think this is serious enough so that if you have a combination of whatever, over 50%, you get a half rate. We think this is serious enough. If you have a 50%, you get a half step up. And where does that appear in the regulation? F3. So to go back to your point, Your Honor, you were making when you were describing what the Veterans Court described as special comp. Special comp is all of 3.350. Doesn't start at F, doesn't start at F3. Starts at A, B, C, D, E. Very detailed provisions identifying for the rating specialists, because that's what these are really for, is how do I rate these individuals? All the various permutations that could exist to qualify under K, L, M, N, and O. And extremely detailed, like this, this, if that, then this, then that, then that. Pages of the CFR. Then you get to F, now, the sixth, I think, if my math is right. F1 and 2 deal with these intermediate rates within the concept of L, M, and N, okay, under 1114. And they, again, precisely deal with, okay, if you got this, you can get a half step between L and N. If you got this, you get a half step. The arguments being made here today has been suddenly in F3, that all can be sort of set aside if you have a bunch of 30% ratings that are not directly related, well, that's not actually accurate either, that are not subsumed within the rating that got you the L, M, or N, or the L, M, or N half step. Mr. Hawking, let me ask you about the regulations. Appendix 11 says a half step increase is provided for under F3. Does that come from the subtitle that says additional 50% disabilities? And then the bottom paragraph says a full step, but the full step doesn't appear in the regulation. But is that implicit in additional independent 100% ratings? Yeah, the F3 is where the secretary would say if you have a 50% rating, whether independently rated or in combination, and you only need one. If you have more, that's awful, but it's for one. You can get a half step increase beyond what has already been detailed in 3.50 up to that point. One half being 50%? No, one half step, so it's a monetary increase between the rates. So if you look at the schedule in 11.14, they have monetary payments for rates. So if you looked at J, which is the typical 100% scheduler rating, or it could be an extra scheduler rating, the veteran gets $2,673 a month. That's their compensation. Then you get to the special rates, and that's the L, M, N, and O rates. And in the schedule, like for example, L says 3,327. So a half step would be what I think the reg. and we refer to as L+, the rating specialist, or an M+. That would be the money that would be halfway between L and M, which in this case is about $172 more or thereabouts. So you're talking L would be like, for example, $3,327, and if you got a half step increase, you would get an additional $172, or $3,499. If you got a full step increase, you'd go from L to M, and you'd get a $3,600. So that's what that's referring to, is the monetary compensation the veteran gets every month. And the half step gets you, it kind of varies based on the difference between the L and the M, and the M and the N, and the N and the O, but that's what that's referring to. So the F4 would get you a full step. If you had 100% scheduler disability, and I want to emphasize, because it goes to a point, Judge Prost, that you're making before about, why can't we combine? Think of it this way. In the normal situation where someone is not in need of special comp, the person can combine disabilities under 4.16, for example, even though they don't have a 100% scheduler rating. And the court's well aware of cases where that's been done based on employability. If you have, under A, if you have a 60% rating, or I think a total 70 with at least a 40, you qualify for a review with the RO. This court's had decisions about who has the authority, the director of comp, because then there's the 4.16B thing. I don't know the name of the case, but I just described it. But the point being, that's extra scheduler relief. That's an individual who couldn't qualify for a direct 100% scheduler award, but they benefited from the 4.16. If you look at F4, when it describes the kind of rating that is susceptible to the one full step, it specifically says that the rating has to be independently rateable at 100% apart from any consideration of individual unemployability. That is the criteria for 4.16. So what the secretary is saying in 4 is that you cannot qualify for a full step 100% using an extra scheduler bump. Can I ask you, does this have anything to do with this thing about the typical combined rating table? They're all related. You're saying that doesn't apply. I mean, on the other side, correct athlete, I think in gray, comes up with a footnote like, wait a minute, doesn't Giselle B. Shulkin say that it would apply? What are we applying here? The relevance, I think, to this question of how do we interpret F3 of 4.25, the combined ratings table, and what I just described in F4. You're not saying that, let me just ask you simply, because I don't want to misunderstand this. You're not saying that the combined ratings table is what you use to combine the F3 calculations, are you? The logic that one would follow to benefit from a combined rating could be similar to the logic one considers when connecting a bunch of sub-50s to get to a 50. I even think in Mr. Berry's case, there may even be an example where he has several conditions that are ideologically related but are not subsumed within the loss of extremity. Is that what's been done here all along? I mean, his case has been adjudicated. I didn't think you were using the typical combined ratings table in this case at all. Am I missing something? The purposes of this discussion, the importance of the combined ratings table is to further demonstrate the rationale that the VA uses when doing ratings, which then the court... But does that apply, does the combined rating tables, the way they calculate those ratings there, apply to the F3 calculations? It would have an effect, in a sense, but see, the combined ratings table is going for an overall rating, right? That's the goal of it. So that's why I can't say that, oh, we go through a 4.25 exercise as it would be normally applied to a person who's not seeking special comp. In an ordinary case, somebody who's trying to get a rating between A and J on the schedule of 11-14, they would look at all the ratings and then they do the combined, just as 4.25 describes, and that's where you get the concepts that I'm talking about here that are relevant to the court when trying to interpret F3. And those concepts are things like we recognize that disabilities don't just stack on top of each other. They have a cumulative effect on the individual. And we take that into account, for example, when doing combined ratings. Or, for example, like we have here, where in F4 you have an exclusion and you can't use an extra scheduler... Okay, give me the question. I'm sorry. I have some more questions, but please, go ahead. Well, I wanted to go back to the pro-veteran canon. You can finish with Judge Post. Oh, well, that was one of my questions, but let me ask you just one other, and this goes to the interpretation of the absence of any language, either limiting it or not limiting it, other than the overall path, which kind of cuts against you, a little bit, maybe. We just did a quick search of our cases in terms of, you're right, K is closer to this because it's under the same statutory provision. But we've got cases that say the assistance referred to in this section will not be available to any veteran more than once. I'm talking about regulatory language. Another case which cited regulatory language, the individual may choose to receive benefits under Chapter 33 at any time, but not more than once during a certified court. Another case, under these regulations, a veteran cannot be compensated more than once for the same disability. I mean, doesn't that, even though your argument on K, which I take it, but I think it's a little rough to make the comparison, but then you've got other statutory, regulatory provisions that if they want to limit the number of times you can get something, they say it. And what I hear is that the regulation could have been written better, but that doesn't answer the question of what does the regulation mean, nor does looking at A's and B's, is that Kaiser doesn't say that. Kaiser talks about, you know, text, structure, history, and purpose. Those are the thing. And what I've been talking about for the most part up here is outside of the P that we talked, and the K that we talked, is structure. And you cannot look at this case and conclude that the Secretary of Veterans Affairs decided in F3 to ignore all that took place before that in 3350, where he spends excruciating detail on outlining how you can get a half-step or a full-step based upon these disabilities. And then simply say, and oh, by the way, if you have a bunch of 30 percenters, and I recommend the court looks through the schedule of ratings and compares the descriptions for various disabilities that are rated at 30 percent, which then can be combined, or even a 30 and a 20 and a 10, and then compare that to the 100 percent rating for those particular disabilities, and you find one's worse. Judge Reina has a question. Yes. Counselor, would you agree with me that the veterans' law as a whole is remedial in nature? Remedial? Yes. I'd have to think about that, but I suppose. Okay. You don't think so? But the questions I was anticipating you asking were where do we stand? No, answer the question I did ask. And I guess you don't. I don't have a position on that right now. I'd have to think about it. I will concede that you come at me from left field, and I'm not prepared to answer your question. You don't understand the concept of a remedial statute? Yeah. I would like to hear the context of where we're going, but yeah. Okay. But yes, I've heard folks describe it as a remedial statute. You've actually eliminated the other questions I did have for you. Thank you. Well, I have questions. Do you agree with what the other side said? I mean, if it's the most reasonable, the Veterans' Canon doesn't come in, but if they're equally plausible interpretations, the Veterans' Canon can be the tiebreaker. This is a position that I will answer your question this way, Judge Post, the way it was presented before. I agree that, yeah, if there's obviously a more reasonable interpretation, Veterans' Canon has no role. I will answer the question about deference this way. We have never argued, nor I believe has this court ever held, that the Veterans' Canon trumps deference. So you won't agree on if they're too reasonably plausible. They're too equally plausible because if there's a deference thing going on here, either through Chevron or through our, you don't want to give that up. As I understand it, the Solicitor General has taken the position in a couple of the cases that these normative canons don't trump textual or more traditional canons. And I don't think that's changed yet. So for now, I would say the answer is yes, we would say that deference trumps Veterans' Canon.  can I just, deference apply in this case at all? We're not asking for deference. Let me ask you this, Counselor. Are you saying that once the deference, the Chevron doctrine is applied to a particular case and you have a result under the analysis of Chevron that the Veterans' Canon cannot come into play at all? We would, we have argued, let me put it this way, we have argued that Chevron trumps the Veterans' Canon. What do you mean trumps? It needs to be looked at before consideration of the Veterans' Canon. Once a Chevron doctrine resolution is reached, the analysis, the Chevron analysis is done, and there's an announcement as to the reasonableness of the agency's determination, are you saying that at that point there's no role for the Veterans' Doctrine? I don't know if I would, if you're saying that in your hypothetical sense. Is that what you mean by trumps? If your hypothetical is that at the end of a Chevron analysis it's determined that, I don't know, if the secretary's position is determined unreasonable somehow as part of that. No, that analysis, the conclusion reached by that analysis cannot be affected or influenced by the Veterans' Canon. We have argued that you need to do the Chevron analysis first, so in that sense, yes, that would be. Give me an example of where the Veterans' Canon does apply. So, well, the courts have announced that where all other tools of construction have been exhausted, the Veterans' Canon. No, no, that's an example or description. No, I don't, oh, where a court has actually done it? Yeah. I believe that. Does the agency do this? I think where it, now we can get into a discussion of this origin, which of course doesn't really have to do with Veterans' benefits. No, I'm asking you. Can you give me an example? I'm not sure there's a case involving Veterans' benefits where they've done that. I think the origin that had to do with folks that were overseas and couldn't get back in time to meet their court obligations and so that's the origin, as I recall, like in King in those cases, that's the origination. I do want to say one thing about the Veterans' Canon. I'm sorry, you don't have an example. I can't think of one right off my top of my head, but I want to say one thing about the Veterans' Canon in this case, Judge Rayner,  As this court articulated in its years and in other cases, application of the Veterans' Canon has to consider all veterans, not just the particular applicant before this court at the time. And one would, I think, have to say that an interpretation, even if you were to use the Veterans' Canon, of this particular F3 that would allow someone who is, in the eyes of the VA, less than disabled, setting aside Mr. Berry in his particular condition because that's not what this court's being asked to do here. What do you mean by that? I mean, it seems to me, I agree to a certain application of what you just said. I think that every veteran is entitled to a reasonable review of the statute in his case and that the Veterans' Canon would apply it. And that that's applying, that's another benefit that should be applicable to every single veteran. I agree with you, but I don't agree and I think this is what you're saying is that you don't apply the Veterans' Canon if it's going to affect another veteran somewhere. It's got to have a major, it's got to be the benefit to the whole universe of veterans. Which is probably why you can't give me an example. Right, we would probably agree to disagree on that one, Your Honor, because I do believe that You can't give me an example. Well, because I don't believe the Veterans' Canon is a sort of tool to get to a result. I think the Veterans' Canon is a tool to interpret the law to benefit veterans, not just the veteran that's before the court at the time. Thank you, counsel. Thank you. I think we have to move to Case No. 0 as for the rebuttal time. So, Your Honors, I'd like to go back and just look at what the purpose of special monthly compensation is. And I believe Judge Crouse, you picked up on this. Special monthly compensation is meant to address the hardships, the additional hardships that our most severely    for in the regular scheduler rating. That's why Congress came up with the Special Monthly Compensation as a way to address the additional hardships that our most severely have with special monthly compensation. And it, as you also noted, Judge Crouse, that Congress did protect itself. It created a statutory cap of SMC level O. So, even if Mr. Berry had disabilities where he could qualify for endless half-step increases, he would still be capped at statutory level O. My friend across the aisle has mentioned that the quality of the disability matters. However, our case law, especially in Sersely, has said we don't ignore the practical realities of the veteran situation We don't believe in this case a veteran like Mr. Berry with all of his disabilities simply because one of them does not individually rate at 100% is somehow less disabled or less deserving of compensation than a veteran who has one single disability rated at 100% that would allow him a full-step increase. Furthermore, looking at the structure of special monthly compensation, I believe my friend has suggested that there could be some slippery slope where we have veterans who are undeserving who are able to somehow add up their additional disabilities to get multiple half-step increases but we would submit that that's not the case. For a veteran to even qualify for an SMC rate, he has to be severely disabled. At that point, his disabilities at his SMC rate are not enough which is why we allow these half and full-step increases. It would be very difficult for a veteran who isn't severely disabled to even mathematically have the various disabilities to add up to get multiple half-step increases. I don't think there should be a concern there about some slippery slope or undeserving although I don't believe that they're undeserving veterans but there is some way that someone can take advantage of our interpretation of the statute and the regulation. Furthermore, we have discussed the structure and we've taken a lot of time to discuss P and K and again, we submit that P is talking about the SMC ladder L through N and how you can kind of move up that ladder whereas K is talking about something entirely different and so the presumption that certain language was used in K and not P is not as indicative that Congress didn't intend for multiple steps under P. However, we would also ask you to look at the structure of subsections F and 3 F3 and F4. I think there is a concern that a veteran can get a higher rate under F3 than he can under F4 but there is nothing in the regulation in fact, the regulation permits stacking F3 on top of F4. F4 explicitly says in addition to L and N and the other intermediate rates outlined above referring to F3 so therefore, if a veteran so qualifies and he has a 100% disability and he has other disabilities he can get subsection F4 one full step and he can also get a half step under subsection F3 so we don't read those subsections as being mutually exclusive and we see subsection F as a whole F1 F2 F3 F4 as describing different ways that veterans can go up the SMC ladder so long as their disabilities permit them to and so we contend that our Mr. Gary's interpretation is most consistent with both the history the purpose as well as the structure of the language and your honor I think my time is up I have one quick question and just to respond and this is not a major point but on Mr. Hockey and my discussion brief as it was on the combined grading table and whether that's the what the applicability that that has in this circumstance sure your honor so we have read Gozell and we believe that the combined grading table to the extent that it applies to subsection F3 teaches the VA how to combine his disabilities to get to the threshold of 50% but it doesn't limit the number of times that he can reach that threshold so once he gets a half step increase he can use the table again and get another half step increase if his disabilities permit thank you thank you counsel